FILED

2012 FEB 10 PM 2: 52

CLERK U.S. DISTRICT COURT
CENTRAL DIST. OF CALIF.
LOS ANGELES

BY_____

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

September 2011 Grand Jury

CR12 - 0130

| | |
|---|---|
| UNITED STATES OF AMERICA, | CR No. 12- |
| Plaintiff, | I N D I C T M E N T |
| v. | [21 U.S.C. § 846: Conspiracy to Distribute Marijuana; 18 U.S.C. § 1956(h): Conspiracy to Launder Money; 21 U.S.C. § 841(a)(1): Possession with Intent to Distribute Marijuana; 18 U.S.C. § 924(c)(1)(A): Possession of a Firearm in Furtherance of a Drug Trafficking Crime; 21 U.S.C. § 853, 18 U.S.C. § 982: Criminal Forfeiture] |
| ANDREW HAMILTON, aka "Anthony Randazzo," aka "Andrew Campbell," aka "Barri Houston," FNU LNU, aka "Chad," RICARDO FISHER, aka "Guy Williams," LANCELOT LEWIS, aka "Tiger," aka "Michael Randazzo," aka "Linton Bell," RICHARD ANDERSON, aka "Rohan Fisher," aka "Terrance Johnson," aka "Brisco," and BRIAN REEVES, aka "Urijah Sewell," | |
| Defendants. | |

//

//

//

//

The Grand Jury charges:

COUNT ONE

[21 U.S.C. § 846]

A.   OBJECT OF THE CONSPIRACY

Beginning on a date unknown and continuing to on or about November 8, 2011, in Los Angeles County and Orange County, within the Central District of California, and elsewhere, defendants ANDREW HAMILTON, also known as ("aka") "Anthony Randazzo," aka "Andrew Campbell," aka "Barri Houston" ("HAMILTON"); First Name Unknown ("FNU") Last Name Unknown ("LNU"), aka "Chad" ("CHAD"); RICARDO FISHER, aka "Guy Williams" ("FISHER"); LANCELOT LEWIS, aka "Tiger," aka "Michael Randazzo," aka "Linton Bell" ("LEWIS"); RICHARD ANDERSON, aka "Rohan Fisher," aka "Terrance Johnson," aka "Brisco" ("ANDERSON"); and BRIAN REEVES, aka "Urijah Sewell" ("REEVES"); and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally distribute at least 1,000 kilograms of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A)(vii).

B.   MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

1.   Defendant HAMILTON would obtain marijuana from defendant CHAD and other marijuana suppliers.

2.   Defendant HAMILTON would supply marijuana to defendants FISHER and ANDERSON and other marijuana distributors in

California and New York.

3.    Defendant FISHER would broker marijuana transactions between marijuana suppliers, including defendant HAMILTON, and marijuana customers, including defendant ANDERSON.

4.    Defendant HAMILTON would ship marijuana from the Central District of California to defendant LEWIS in Brooklyn, New York.

5.    Defendant LEWIS would distribute marijuana to other marijuana distributors on the East Coast of the United States and would collect marijuana proceeds from those distributors.

6.    Defendant LEWIS would mail marijuana proceeds from Brooklyn, New York, to defendant HAMILTON in the Central District of California.

7.    Defendant REEVES would package and transport marijuana to shipping locations in the Central District of California on behalf of defendant HAMILTON.

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, on or about the following dates, defendants HAMILTON, CHAD, FISHER, LEWIS, ANDERSON, and REEVES, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to the following:

**October 26, 2009 Marijuana Samples**

1.    On October 25, 2009, using coded language in a telephone conversation, an unindicted co-conspirator told defendant FISHER that a marijuana supplier would have 500 pounds of marijuana available for purchase the following morning at a

price of $620 per pound.

2. On October 26, 2009, defendants FISHER and ANDERSON drove to Bell Gardens, California, to look at a shipment of marijuana.

3. On October 26, 2009, using coded language in a telephone conversation, defendant FISHER told unindicted co-conspirator "Mugga" that the marijuana he had viewed was not of good quality.

4. On October 26, 2009, using coded language in a telephone conversation, defendant FISHER told unindicted co-conspirator "Mugga" that he wanted to see the 300 pounds of marijuana that unindicted co-conspirator "Mugga" had.

5. On October 26, 2009, using coded language in a telephone conversation, defendant FISHER agreed to meet unindicted co-conspirator "Mugga" at a gas station so defendant FISHER could see a sample of the marijuana he had.

6. On October 26, 2009, defendants FISHER and ANDERSON met unindicted co-conspirator "Mugga" at a gas station in Compton, California, to view a sample of the marijuana unindicted co-conspirator "Mugga" had available for sale.

**October 27, 2009 Seizure of $248,635 in Inglewood**

7. On October 27, 2009, using coded language in a telephone conversation, defendant FISHER told defendant ANDERSON that defendant HAMILTON would sell defendant ANDERSON marijuana for $630 per pound.

8. On October 27, 2009, using coded language in a telephone conversation, defendant ANDERSON told defendant FISHER that he wanted a total of 800 pounds of marijuana for

himself and another marijuana distributor.

9.   On October 27, 2009, using coded language in a telephone conversation, defendant FISHER told defendant HAMILTON that defendant ANDERSON wanted 1,000 pounds of marijuana.

10.   On October 27, 2009, using coded language in a telephone conversation, defendant HAMILTON told defendant FISHER that he would sell defendant ANDERSON 1,000 pounds of marijuana for $620 per pound.

11.   On October 27, 2009, in Inglewood, California, defendants FISHER and ANDERSON possessed in their vehicle approximately $248,635 in cash in heat-sealed packages.

**January 7, 2010 Seizure of $135,530**

12.   On January 7, 2010, using coded language in a telephone conversation, defendant FISHER told a marijuana customer that defendant FISHER's marijuana supplier was charging $580 per pound of marijuana.

13.   On January 7, 2010, using coded language in a telephone conversation, defendant FISHER told unindicted co-conspirator "T" that defendant FISHER's customer wanted approximately 300 pounds of marijuana, which unindicted co-conspirator "T" offered to sell to defendant FISHER for $550 per pound because it was not high quality marijuana.

14.   On January 7, 2010, using coded language in a telephone conversation, defendant FISHER told unindicted co-conspirator "T" that defendant FISHER and his marijuana customer were on their way to meet unindicted co-conspirator "T" in Whittier, California.

15. On January 7, 2010, defendants FISHER and ANDERSON, and unindicted marijuana customers D.G., C.M., and D.A., examined marijuana possessed by unindicted co-conspirator "T" inside a business location in Whittier, California.

16. On January 7, 2010, in Los Angeles, California, unindicted marijuana customers D.G., C.M., and D.A. possessed in their vehicle approximately $135,530 in cash.

**February 12, 2010 Seizure of 1,212 Kilograms of Marijuana and $637,405**

17. On February 11, 2010, using coded language in a telephone conversation, defendant HAMILTON told defendant LEWIS that he did not have a vehicle to transport bales of marijuana.

18. On February 11, 2010, using coded language in a telephone conversation, defendant CHAD told defendant HAMILTON that a shipment of high-quality marijuana was arriving that night.

19. On February 11, 2010, using coded language in a telephone conversation, defendant CHAD told defendant HAMILTON that the price of the marijuana was $580 per pound.

20. On February 11, 2010, using coded language in a telephone conversation, an unindicted co-conspirator told defendant HAMILTON that the marijuana would be transported to him in a white van in two trips.

21. On February 12, 2010, using coded language in a telephone conversation, defendant CHAD instructed an unindicted co-conspirator to show defendant HAMILTON a sample of marijuana.

22. On February 12, 2010, using coded language in a telephone conversation, defendant CHAD instructed an unindicted

co-conspirator to fill a van with bales of marijuana.

23. On February 12, 2010, using coded language in a telephone conversation, defendant CHAD told defendant HAMILTON that there were 112 bales of marijuana in the van.

24. On February 12, 2010, using coded language in a telephone conversation, defendant HAMILTON told defendant CHAD that he had picked up the van loaded with marijuana from defendant CHAD's courier.

25. On February 12, 2010, defendant HAMILTON possessed, at a warehouse in Compton, California, 112 bales containing approximately 1,212 kilograms of marijuana.

26. On February 12, 2010, in Compton, California, defendant HAMILTON possessed, in his vehicle, approximately $637,405 in cash.

27. On February 12, 2010, using coded language in a telephone conversation, defendant HAMILTON told defendant LEWIS that he had been arrested with more than $500,000 in cash in his possession while on his way to pick up marijuana from defendant CHAD.

**July 16, 2010 Seizure of $709,930 from Mail**

28. On July 11, 2010, using coded language in a telephone conversation, defendant HAMILTON told defendant LEWIS that defendant HAMILTON had more than $30,000 in narcotics proceeds from a marijuana distributor in his possession.

29. On July 11, 2010, using coded language in a telephone conversation, defendant LEWIS told defendant HAMILTON that he had constructed two boxes to use for mailing $500,000 in narcotics proceeds.

30. On July 12, 2010, using coded language in a telephone conversation, defendant HAMILTON instructed defendant LEWIS to mail the boxes containing narcotics proceeds from a UPS shipping location in Long Island, New York.

31. On July 12, 2010, using coded language in a telephone conversation, defendant HAMILTON told defendant LEWIS to mail the packages to a residence in Irvine, California.

32. On July 12, 2010, defendant LEWIS and an unknown co-conspirator mailed and caused to be mailed to defendant HAMILTON approximately $709,930 in cash, which was later seized by law enforcement officers in Aliso Viejo, California.

33. On July 17, 2010, using coded language in a telephone conversation, defendant HAMILTON told an unindicted co-conspirator that he would not be able to purchase marijuana until the following week because a money shipment had not arrived.

**July 20, 2010 Seizure of Four Firearms and $10,000 in Irvine**

34. On July 16, 2010, using coded language in a telephone conversation, defendant HAMILTON told defendant LEWIS that he had four firearms and false identification stored at a residence in Irvine, California.

35. On July 20, 2010, at an apartment in Irvine, California, defendant HAMILTON possessed (1) a loaded 9 millimeter Daewoo semi-automatic pistol, (2) a loaded 9 millimeter Beretta semi-automatic pistol, (3) a 9 millimeter Glock semi-automatic pistol, (4) a loaded .44 caliber Ruger revolver, and (5) approximately $10,000 in cash.

36. On August 1, 2010, using coded language in a telephone conversation, defendant HAMILTON told an unidentified co-

8

conspirator that law enforcement had seized four firearms from his apartment.

**March 24, 2011 Seizure of 337.8 Kilograms of Marijuana**

37. On March 24, 2011, on behalf of defendant HAMILTON, defendant REEVES delivered approximately 337.8 kilograms of marijuana to a warehouse in Gardena, California.

38. On March 24, 2011, in Gardena, California, defendant HAMILTON caused to be placed in a truck for delivery to Brooklyn, New York, approximately 337.8 kilograms of marijuana, which law enforcement officers later seized.

**November 8, 2011 Seizure of $40,000 in Canyon Country**

39. On November 8, 2011, at an apartment in Canyon Country, California, defendant REEVES possessed approximately $40,000 in cash, a loaded .45 caliber AMT Hardballer semi-automatic pistol, and a large quantity of marijuana packaging material, including styrofoam, buckets of grease, insulation, plastic wrap, packing peanuts, and a label printer.

COUNT TWO

[18 U.S.C. § 1956(h)]

A.    OBJECT OF THE CONSPIRACY

Beginning on an unknown date and continuing until on or about November 8, 2011, in Los Angeles County, within the Central District of California, and elsewhere, defendants ANDREW HAMILTON, also known as ("aka") "Anthony Randazzo," aka "Andrew Campbell," aka "Barri Houston" ("HAMILTON"); RICARDO FISHER, aka "Guy Williams" ("FISHER"); LANCELOT LEWIS, aka "Tiger," aka "Michael Randazzo," aka "Linton Bell" ("LEWIS"); and RICHARD ANDERSON, aka "Rohan Fisher," aka "Terrance Johnson," aka "Brisco" ("ANDERSON"); and others known and unknown to the Grand Jury, conspired and agreed with each other to knowingly and intentionally conduct and attempt to conduct financial transactions affecting interstate commerce with the intent to promote the carrying on of specified unlawful activity, namely, conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 846, and possession with intent to distribute marijuana, in violation of Title 21, United States Code, Section 841(a)(1), knowing that property involved in the financial transactions represented the proceeds of some form of unlawful activity, and which property was, in fact, the proceeds of said specified unlawful activity, in violation of Title 18, United States Code, Section 1956(a)(1)(A)(i).

B.    MEANS BY WHICH THE OBJECT OF THE CONSPIRACY WAS TO BE ACCOMPLISHED

The object of the conspiracy was to be accomplished in substance as follows:

10

1-7.    The Grand Jury re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 7 of Section B of Count One setting forth the means of the conspiracy charged in Count One.

C.    OVERT ACTS

In furtherance of the conspiracy, and to accomplish the object of the conspiracy, defendants HAMILTON, FISHER, LEWIS, and ANDERSON, and others known and unknown to the Grand Jury, committed various overt acts within the Central District of California, and elsewhere, including but not limited to the following:

1-39. The Grand Jury re-alleges and incorporates by reference as if fully set forth herein paragraphs 1 through 39 of Section C of Count One setting forth the overt acts of the conspiracy charged in Count One.

COUNT THREE

[21 U.S.C. §§ 841(a)(1), (b)(1)(A)(vii)]

On or about February 12, 2010, in Los Angeles County, within the Central District of California, defendants ANDREW HAMILTON, also known as ("aka") "Anthony Randazzo," aka "Andrew Campbell," aka "Barri Houston," and first name unknown ("FNU") last name unknown ("LNU"), aka "Chad," knowingly and intentionally possessed with intent to distribute at least 1,000 kilograms, that is, approximately 1,212 kilograms, of a mixture and substance containing a detectable amount of marijuana, a Schedule I controlled substance.

COUNT FOUR

[18 U.S.C. § 924(c)(1)(A)(i)]

On or about July 20, 2010, in Orange County, within the Central District of California, ANDREW HAMILTON, also known as ("aka") "Anthony Randazzo," aka "Andrew Campbell," aka "Barri Houston," knowingly possessed firearms, namely, a loaded 9 millimeter Daewoo semi-automatic pistol, serial number 10927; a loaded 9 millimeter Beretta semi-automatic pistol, serial number BER178575; a 9 millimeter Glock semi-automatic pistol, serial number CGP327US; and a loaded .44 caliber Ruger revolver, serial number 8310214, in furtherance of a drug trafficking crime, namely, conspiracy to distribute marijuana, in violation of Title 21, United States Code, Section 846, as charged in Count One of this Indictment.

CRIMINAL FORFEITURE ALLEGATION ONE

[21 U.S.C. § 853]

1. Pursuant to Title 21, United States Code, Section 853(a), each defendant convicted of an offense charged in Counts One and Three of this Indictment shall forfeit to the United States the following property:

    a. All right, title, and interest in --

        (i) any and all property constituting, or derived from, any proceeds obtained, directly or indirectly, as a result of the offenses described in Counts One and Three; and,

        (ii) any property, real or personal, used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such offenses; and

        (iii) any property, real or personal, involved in such offenses, or traceable to such property.

    b. A sum of money equal to the total value of the property described in paragraphs 1(a)(i), (ii), and (iii). If more than one defendant is convicted of the offenses charged in Counts One or Three, the defendants so convicted are jointly and severally liable for the amount involved in such offense.

2. Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 1(a), if, as a

14

result of any act or omission of said defendant, said property, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the court; has been substantially diminished in value; or has been commingled with other property that cannot be divided without difficulty.

CRIMINAL FORFEITURE ALLEGATION TWO

[18 U.S.C. § 982(a)(1)]

1.    Count Two of this Indictment alleges acts or activities constituting an offense involving a conspiracy to launder money, committed in violation of 18 U.S.C. § 1956(h).  Pursuant to Title 18, United States Code, Section 982, each defendant who is convicted of such an offense shall forfeit to the United States any right, title, and interest in any property, real or personal, involved in such offense, or any property traceable to such property, including, but not limited to:

a.    (i)    $248,635 in U.S. currency;

(ii)   $135,530 in U.S. currency;

(iii)  $637,405 in U.S. currency;

(iv)   $709,930 in U.S. currency;

(v)    $10,000 in U.S. currency; and

(vi)   $40,000 in U.S. currency.

b.    A sum of money equal to the total value of the property described in paragraph 1(a)(i) through (vi), inclusive.

2.    Pursuant to Title 21, United States Code, Section 853(p), as incorporated by Title 28, United States Code, Section 2461(c), each defendant shall forfeit substitute property, up to the value of the amount described in paragraph 1(a), if, as the result of any act or omission of said defendant, said property, or any portion thereof, cannot be located upon the exercise of due diligence; has been transferred, sold to, or deposited with a third party; has been placed beyond the jurisdiction of the

//

16

court; has been substantially diminished in value; or has been commingled with other property which cannot be divided without difficulty.

A TRUE BILL

/S/
Foreperson

ANDRÉ BIROTTE JR.
United States Attorney

ROBERT E. DUGDALE
Assistant United States Attorney
Chief, Criminal Division

RODRIGO A. CASTRO-SILVA
Assistant United States Attorney
Chief, Organized Crime Drug
  Enforcement Task Force Section

KEVIN S. ROSENBERG
Assistant United States Attorney
Deputy Chief, Organized Crime Drug
  Enforcement Task Force Section

ROSALIND WANG
Assistant United States Attorney
Organized Crime Drug Enforcement
  Task Force Section

17